UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SANDRA D. PAUL,

        Plaintiff,

v.

                                   Case No. 10-10832

HENRI-LINÉ MACHINE TOOLS, INC,        Honorable Julian Abele Cook, Jr.

        Defendant.


ORDER

       This is a product liability action in which the Plaintiff, Sandra D. Paul, acting in her official capacity as the personal representative of the deceased estate of her husband, Jay Curtis Paul,[1] contends that an overhead gantry milling machine that had been manufactured and designed by the Defendant, Henri-Liné Machine Tools, Inc. ("Henri-Liné Tools"), was responsible for his death. Her allegations of liability have been denied by Henri-Liné Tools.

       There are several motions currently pending before the Court; namely, (1) Paul's motion to strike the reply by Henri-Liné Tools, (2) Henri-Liné Tools' motion for the entry of a summary judgment; and (3) Paul's motion to set a trial date.

I.

       On December 16, 2011, Henri-Liné Tools filed a motion for the entry of a summary judgment, relying in part on the testimony of Jack Auflick, whose opinion relating to the probability of the accident was challenged by Paul. In her effort to prevent Auflick's testimony from being

---

       [1]During the course of this order, the Court has interchanged the name of the Plaintiff's deceased husband (Jay Curtis Paul) and "the Deceased" only for the purpose of writing style.

adopted by the Court, Paul filed a motion which, if granted, would exclude this expert opinion from being considered by the Court. On the following day, her motion to exclude was referred to a magistrate judge who denied her motion.  Paul timely filed an objection to this order. On December 20, 2012, the Court affirmed the magistrate judge's ruling. Six days later, Henri-Liné Tools filed its reply brief on December 26, 2012.

Paul submits that the reply brief from Henri-Liné Tools was due seven days after the entry of the magistrate judge's order. Henri-Liné Tools, on the other hand, maintains that the reply brief was timely filed because, as a result of Paul's objections, it was not due until seven days after the entry of the final order by the Court on December 20th. The Court agrees with Henri-Liné Tools on this issue. Fed. R. Civ. P. 72 requires a court to consider all timely filed objections and to set aside any part of an order that is clearly erroneous. Inasmuch as both parties knew that an order was forthcoming from the Court which would resolve Paul's objection, Henri-Liné Tools appropriately waited to file its reply brief until the entry of the order. Notably, Paul does not allege that she suffered any prejudice as a result of the later filing. Thus, Paul's motion to strike Henri-Liné Tools' reply is denied.

## II.

This lawsuit relates to  an accident that occurred at Lincoln Park Boring Company ("Lincoln Park Boring") on July 30, 2008 when Paul's husband, Jay Curtis Paul, while operating one of Henri-Liné Tools's overhead gantry milling machines, left his operator's booth and later became entangled in its vertical cutting tool. Lincoln Park Boring is a machining company, which specializes in machining unique large metal components to the specifications of its customers. Henri-Liné Tools is a manufacturer and seller of custom overhead gantry milling machines.

2

Jay Curtis Paul was initially hired by Lincoln Park Boring in 2002. For over six years, he served as the lead machinist and the day-shift operator on the overhead gantry machine. The president of Lincoln Park Boring, Richard Yesue, referred to him as the "best machinist" he had ever employed at the company. (Yesue Dep. 20:16-21). Frank Shafer, the head machine tool operator, described him as the best machinist he had seen in his forty years of experience. (Shafer Dep. 62-63). At the time of his death, Jay Curtis Paul had accumulated over twenty years of experience as a machinist.

The overhead gantry milling machine is a large, complex machine with computerized numeric controls that is designed to cut metal. This particular machine was built specifically for Lincoln Park Boring in 1999 and 2000 and installed there in late 2000 and early 2001. After the installation, Henri-Liné Tools trained Shafer how to operate the machine, and Shafer trained the other Lincoln Park Boring employees.

The work area of the machine is a flat, rectangular bed that is approximately 50 feet long and 15 feet wide and level with the floor of the shop. The work piece remains at rest on the bed of the machine while the cutting tool of the machine travels around the stationary piece. An overhead gantry milling machine is characterized by a large, metal cross-rail that is attached to two vertical columns, which are located on either side of the machine bed. This entire assembly ("the gantry") travels as a unit up and down the length of the work area ("the x-axis"). Attached to the crossrail is a vertical spindle which houses the cutting tool. This spindle travels back and forth along the crossrail, allowing access to the entire width of the bed of the machine ("the y-axis"). The spindle also raises and lowers the cutting head vertically to different heights above the platform bed ("the z-axis"). Thus, through the movement of the gantry and the spindle, the cutting head is able to travel

3

in all three dimensions and access any area on or above the bed of the machine.

This machine is used by Lincoln Park Boring to create one-of-a-kind machine parts. Every part is a different size and shape and some of them fill the entire work space or even extend off the bed. (Yesue Dep., at 49:10-50:12). The part that was being utilized at the time of the accident was 14.5 feet wide by 50 feet long. (Auflick Rep., Pl. Resp., Ex. 14, at 4). Yesue testified that he purchased this machine with the hope of attracting customers who needed a unique piece and for whom the purchase of a milling machine would not be practical. The flexibility to machine different sizes and shapes of metal is a key attribute of the overhead gantry milling machine.

The machine's operation is controlled from a platform that is permanently attached to the gantry in order to provide a close view of the spindle and the cutting process. Once the machine is programmed and the program is started, the machine continues to operate even if the operator leaves the control station on the operator's platform. There is no guard or other barrier to prevent the operator from entering the work area during its operation.

This particular machine is frequently operated on a twenty-four hour basis. Operators often must exit the platform during operation in order to perform such tasks as preparing tools, cleaning the floor, preparing materials for the next part, removing metal chips created by the cutting tool, inspecting the work piece, verifying that the machine is cutting correctly, or applying lubricant to the cut. An air hose with an attachment approximately eighteen inches long permitted operators to maintain some distance between themselves and the cutting tool when blowing metal chips away from the point of the cut.

Henri-Liné Tools evaluated the issue of operator safety multiple times, including its consideration of a means of preventing the operator from leaving the platform while the machine

4

was cutting. (Jetté Dep: 22, 37). The Company had considered adding a barrier to the machine, but the erection of such a barrier was generally thought to be impractical, given the need for (1) the operator to have access to the work area while the machine is running and (2) the flexibility to machine unique parts. (*Id.* at 19-23, 28, 37).

In this case, there were no known witnesses to the accident, and its cause is unknown. It was determined that the machine was in an automatic mode when Jay Curtis Paul left the platform and entered work area. The parties have speculated that he may have been blowing metal chips off of the work piece at the time of the accident. Apparently, while he was on the bed of the machine near the work piece, the cutting tool traveled directly over his head and then, in order to continue its programmed cuts, descended, cutting into his shoulder. It is not clear why he permitted the cutting tool to get so close to him. This particular machine moves at a maximum speed of approximately one-half mile per hour, (Anthony Dep. 177:8-15), which is considered low-speed, *Id.* at 87:18-21. The average person walks more than five times faster than the machine's highest speed. Aside from being slow, the machine is also quite visible and noisy when it is moving. (Jetté Dep. 59:7-20). Yesue testified that (1) Jay Curtis Paul knew that one should never allow himself to come between the cutter and the work piece and (2) nobody was able to deduce an explanation for the accident that made sense to him. *Id.* at 22:3-4. The Plaintiff speculates that her husband may have thought that he had programmed a pause in the code that would stop the cutting tool at the point directly above him.

On July 30, 2008, the accident was investigated by the Michigan Occupational Safety & Health Administration ("MIOSHA"). After its investigation, MIOSHA declined to issue a citation to Lincoln Park Boring. Although the MIOSHA report indicated that the machine was adequately

5

guarded, it also appeared to indicate that the operator should not be able to physically interpose himself between the cutting head and the work piece. The report did not make any recommendations regarding additional guards to place on the machine.

This lawsuit followed on March 1, 2010.

III.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); *see also Anderson*, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

IV.

Paul raises claims of (1) negligence based on (a) defective product design and (b) a failure to provide adequate warnings and instructions, and (2) breach of implied and express warranties. She seeks exemplary damages as a result of Henri-Liné Tools' alleged wanton and reckless indifference to the safety of machine operators.

In order to successfully raise a claim of negligence based on defective product design, "the plaintiff must present evidence concerning the magnitude of the risks involved and the reasonableness of any proposed alternative design." *Reeves v. Cincinnati, Inc.*, 439 N.W.2d 326, 329 (Mich. Ct. App. 1989) (citing *Owens v. Allis-Chalmers Corp.*, 326 N.W.2d 372, 379 (Mich. 1982)). Under this "risk-utility" test, a plaintiff must produce evidence demonstrating that:

> (1) the severity of the injury was foreseeable by the manufacturer;
> (2) the likelihood of occurrence of the injury was foreseeable by the

7

> manufacturer at the time of distribution of the product;
> (3) there was a reasonable alternative design available;
> (4) the alternative design was practicable;
> (5) the alternative design would have reduced the foreseeable risk of harm posed by the product; and
> (6) the omission of the alternative design rendered the product not reasonably safe.

*Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 617-18 (6th Cir. 2001). The burden on the plaintiff is to produce "proof sufficient for a reasonable jury to balance the magnitude of the risk versus the feasibility of other design alternatives, or otherwise to weigh the unreasonableness of risks arising from the design chosen." *Miller v. Ingersoll-Rand Co.*, 148 Fed. App'x. 420, 423 (6th Cir. 2005) (internal quotations omitted) (citing *Siminski v. Klein Tools, Inc.*, 840 F.2d 356, 358 (6th Cir. 1988)). "The competing factors to be weighed under a risk-utility balancing test invite the trier of fact to consider the alternatives and risks faced by the manufacturer and to determine whether in light of these the manufacturer exercised reasonable care in making the design choices it made." *Prentis v. Yale Mfg Co.*, 365 N.W.2d 176, 184 (Mich. 1984).

Paul initially asserts that the Lincoln Park Boring machine was defective because it lacked appropriate guards to prevent an operator from entering the work area while the machine was cutting or from placing a body part between the cutting tool and the work piece. If such guarding is impractical, as Henri-Liné Tools submits, Paul maintains that the Company should have incorporated a device known as a "dead-man's switch" to protect an operator who must enter the danger area while the machine is cutting. A "dead-man's switch" is a one-handed device that is connected by a cord to the machine and carried by the operator when he leaves the safety of the platform. For the device to function properly, an operator must grip the switch with light pressure before entering the danger area and maintain the pressure the entire time he is in the work area. If

at any time the operator squeezes the device or releases it, a signal is transmitted which stops the machine immediately. Paul submits that if the Plaintiff's husband had used such a device, his instinct to squeeze or release the switch upon contact with the spindle would have stopped the machine after only a minor injury.

For the purposes of this motion, Henri-Liné Tools has stipulated that Paul's suggested safety feature is a reasonable alternative design which satisfies the requirements of prongs three, four, five, and six. Nevertheless, Henri-Liné Tools contends that Paul has not met the requirements of the first and second prongs because she has not produced any evidence that the severity or the likelihood of the accident were foreseeable at the time of injury.

Although Henri-Liné Tools alleges that Paul cannot establish the foreseeability of the severity of the injury, it fails to further develop this argument with facts or some legal analysis. As a result, this issue is deemed to have been waived. It has often been held in this Circuit that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *Garner v. Cuyahoga County Juvenile Court,* 554 F.3d 624, 640-41 (6th Cir. 2009) (quoting *McPherson v. Kelsey,* 125 F.3d 989, 995-96 (6th Cir. 1997).     Even if the issue has not been waived, the Court is persuaded that Paul has adequately demonstrated that the severity of the injury was foreseeable. Henri-Liné Tools' brief cites numerous excerpts of testimony and other evidence which indicate that even a casual observer would immediately recognize that contact with the cutting tool would cause serious injury. For example, Henri-Liné Tools' own maintenance manual for the machine states that "[e]ven when used strictly according to instructions, when working on or with the spindle inherent danger to life and

9

limb of the user . . . still exists." Experts from both parties testified that such an accident would be very dangerous, and, in its analysis of Paul's "failure to warn" claim, Henri-Liné Tools' repeatedly referenced the obviousness that contact with the cutting tool would cause severe harm.

Thus, the only contested issue is whether Paul has sufficiently demonstrated the likelihood of a foreseeable injury. Michigan law generally requires "data or other factual evidence concerning the magnitude of the risks involved." *Hammonds v. Icon Health & Fitness*, 616 F. Supp. 2d 674 (E.D. Mich. 2009) (citing *Owens v. Allis-Chalmers Corp.*, 326 N.W.2d 372, 379 (Mich. 1982)). Such evidence may be in the form of statistics, *Owens*, 326 N.W.2d at 379, similar prior incidents, *Croskey v. BMW of North America, Inc.*, 532 F.3d 511, 516 (6th Cir. 2008), or, alternatively, a plaintiff may introduce "considerable evidence" that the product is "in general unsafe" due to a product defect. *See Reeves*, 439 N.W.2d at 330. In *Reeves*, the plaintiffs were able to demonstrate the magnitude of risks by introducing expert testimony that it was well-known that a defect common to power presses caused "numerous serious injuries in workplaces." *Id.* at 329.

Typically, courts have not permitted a plaintiff to satisfy the first element by proving that an injury was merely foreseeable. Rather, a plaintiff is required to provide some factual evidence which demonstrates the probability of an injury. In *Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 618 (6th Cir. 2001), the Sixth Circuit held that the plaintiff was unable to demonstrate the magnitude of the risks involved when his expert "testified that he had never heard of similar accidents occurring . . . and did not know the probability of a similar accident happening." Other courts have similarly held that a plaintiff must produce evidence which indicates the likelihood of a similar accident. *See Miller v. Ingersoll-Rand* Co., 148 F. App'x 420, 424 ("[A]though from the testimony of plaintiff's expert one might infer that [the claimed ] injuries were foreseeable, neither [the expert's] testimony

10

nor any other evidence on the record gave any indication how likely such an event might be." (quoting *Owens*, 326 N.W.2d at 379)); *Beaver v. Howard Miller Clock Co., Inc.*, 852 F. Supp. 631, 636-37 (W.D. Mich. 1994) ("[A]cknowledging the foreseeability of injury does not conclude the inquiry, for in order to justify presentation of the negligence issue to the jury, the plaintiff must present some evidence demonstrating how likely children are to be injured by the product in question."); *David v. Mach. Distribution, Inc.*, No. 239231, 2003 WL 21920396, at *4 (Mich. Ct. App. Aug. 12, 2003) (affirming summary judgment in favor of defendant because, in part, "[p]laintiffs failed to present the type of statistical analysis necessary to demonstrate how likely such an accident . . . might be, or to present evidence concerning the severity of injuries sustainable."); *but see Cacevic v. Simplimatic Eng'g Co.*, 645 N.W.2d 287, 291 (Mich. Ct. App. 2001) (denial of directed verdict for defendant because plaintiff produced evidence that injury was foreseeable).

In this case, Paul has demonstrated that an operator injury was foreseeable to Henri-Liné Tools. Evidence was produced that an operator must regularly enter the work area while the machine is in use. An employee for Henri-Liné Tools testified that at the time the Lincoln Boring machine was designed, the Company considered implementing safety measures for operators who must venture onto the machine bed but it deemed the addition of barriers to be impractical. Paul's experts testified that the need for operator's to enter the work area created the possibility of injury. Thus, she has produced sufficient factual evidence to indicate that the possibility of injury was foreseeable.

However, she has not produced any statistical evidence to demonstrate the likelihood of an injury resulting from use of the machine. The fact that a machine is dangerous *per se* is an insufficient basis to demonstrate the likelihood of an injury. *Gregory v. Cincinnati Inc.*, No. 198382, 1999 WL 33453911 (Mich. Ct. App. Feb. 23, 1999) ("[E]vidence showing merely that there was a

11

risk of harm is insufficient to meet the plaintiff's burden to show *what* the risk of harm was (e.g., how frequently such incidents occurred, the extent to which the risk can be mitigated by adequate training)."). The evidence indicates that this is the first serious injury involving an overhead gantry milling machine. Between 1985 and 2006, Henri-Liné Tool sold more than forty overhead gantry milling machines. There has never been a reported incident of a person suffering an injury while using one of these machines. Moreover, there are no reported incidents involving any overhead gantry milling machine, regardless of the manufacturer. Neither party is aware of any serious injuries or death caused by an overhead gantry milling machine, and Paul's experts testified that they were not able to quantify the probability of a similar accident occurring. On the other hand, Henri-Liné Tools' expert witness, Jack Auflick, testified that the likelihood of this accident occurring was minuscule.

Paul is also unable to produce evidence of similar prior accidents involving an overhead gantry milling machine. Such prior accidents must be "substantially similar" to the accident at issue. *Croskey*, 532 F.3d at 518. "Substantial similarity means that the accidents must have occurred under similar circumstances or share the same cause." *Id.*; *see also Anderson v. Whittaker Corp.*, 894 F.2d 804, 813 (6th Cir. 1990) (substantial similarity existed where incidents involved same model boat, same hull design, same defect, and similar circumstances of water intake); *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500 (6th Cir. 1998) (upholding decision to exclude data related to larger all-terrain vehicles in motorbike products liability case). "The plaintiff has the burden of showing the substantial similarity between prior accidents and his own." *Croskey*, 532 F.3d at 518.

Paul's expert witness, John Lauhoff, conducted a review of workplace accidents, in which he categorized as "similar" any incident that involved a rotating shaft, a failure to lockout, or a

12

failure to guard. (Lauhoff Dep. 127). As a result, he reported incidents which involved a wide variety of machine tools, ranging from forklifts and saws to scaffolding. *Id.* Injuries caused by such disparate tools are not relevant to the likelihood of injury caused by an overhead gantry milling machine. While accidents involving horizontal milling machines come closer to the mark, Paul has not established that the interaction between the operator and a horizontal milling machine is sufficiently similar to that of an overhead gantry milling machine. *See Gregory v. Cincinnati, Inc.*, Nos. 19382, 199691, 1999 WL 33453911, at *5 (Mich. Ct. App. Feb. 23, 1999) (evidence of injuries from power presses not relevant to alleged defective design of press brake because the machines "function very differently, especially with respect to the nature of the operator's interface with the machine."). Without some showing by Paul that a reported accident was substantially similar to the accident at issue in this case, the Court will not consider Lauhoff's report.

Finally, Paul has not produced any testimony which would indicate that these machines were widely known to cause serious injuries. *See Reeves v. Cincinnati, Inc.*, 439 N.W.2d at 329. Her expert witnesses testified that they had not heard of another accident involving an overhead gantry machine and did not know the likelihood that such an accident would occur. In fact, the available evidence indicates that this machine was not known to have caused serious injury. As a result, the Court must conclude that Paul has failed to satisfy the first element of the risk-utility test and, thus, she is unable to prove a prima facie case of design defect.

Henri-Liné Tools offers an alternative argument in support of its motion. It contends that even if, for the sake of argument, its machine is thought to be unreasonably dangerous, liability is nevertheless precluded by Mich. Comp. Laws Ann. § 600.2947(3). The text of this statute reads as follows:

> A manufacturer or seller is not liable in a product liability action if the purchaser or user of the product was aware that use of the product created an unreasonable risk of personal injury and voluntarily exposed himself or herself to that risk and the risk that he or she exposed himself or herself to was the proximate cause of the injury. This subsection does not relieve a manufacturer or seller from a duty to use reasonable care in a product's production.

Mich. Comp. Laws Ann. § 600.2947(3).

According to Henri-Liné Tools, this statute precludes liability because Paul admitted that her husband was aware that the cutting tool was capable of injuring him but nevertheless voluntarily exposed himself to that hazard by permitting the cutting tool to pass over his head. Def. Reply 2. The Court rejects this argument. The fact that the Plaintiff's husband recognized that the machine is dangerous and capable of inflicting serious injury does not demonstrate that he was aware that his use of the machine created an unreasonable risk of injury.

Paul submits that her claim of breach of implied warranty must survive summary judgment because it does not require proof of a defect and thus the above-mentioned risk-utility test is inapplicable. To the contrary, in *Hollister v. Dayton Hudson Corp.*, 201 F.3d 731, 737 (6th Cir. 2000), the Sixth Circuit held that an implied warranty claim which is based on a product design defect requires a plaintiff to satisfy the exact same elements of proof as a negligence claim.

> [W]here a seller is also the manufacturer, Michigan courts have observed that claims of negligence and breach of implied warranty are, for all intents and purposes, identical. . . . A suit for breach of implied warranty against a seller who is also the manufacturer will therefore require the same showing of negligence on the defendant's part as an ordinary products liability suit against a manufacturer.

*Id.* at 736-37. The analysis of an implied warranty cause of action diverges from that of a product design defect only when the defendant is a non-manufacturing seller. *Id.*; *see also Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 191 n.30 (Mich. 1984) ("[T]he only time the distinction between implied

14

warranty and negligence may have any significance in design defect cases, is in determining the liability of a seller who is not also the manufacturer of a product."). In this case, Henri-Liné is both the manufacturer and the seller, and therefore the analysis for the implied warranty claim is identical to that of the negligence claim. For the same reasons that the product design defect claim failed, the implied warranty claim must also fail.

Henri-Liné Tools next contends that the Plaintiff's failure to warn claim must be dismissed because (1) Lincoln Park Boring and Jay Curtis Paul were sophisticated users, and (2) the relevant danger was open and obvious. Under Michigan law, in order to establish that a product is defective due to a failure to warn, a plaintiff must demonstrate that a manufacturer: "(1) had actual or constructive knowledge of the alleged danger; (2) had no reason to believe that consumers would know of this danger, and (3) failed to exercise reasonable care to inform consumers of the danger." *Mills v. Curioni, Inc.*, 238 F. Supp. 2d 876, 887 (E.D. Mich. 2002) (citing *Peck v. Bridgeport Machines, Inc.*, 237 F.3d 614, 619 (6th Cir. 2001). However, a defense is created by Mich. Comp. Laws § 600.2947(4), which provides that: "Except to the extent a state or federal statute or regulation requires a manufacturer to warn, a manufacturer or seller is not liable in a product liability action for failure to provide an adequate warning if the product is provided for use by a sophisticated user." Michigan law defines a "sophisticated user" as:

> a person or entity that, by virtue of training, experience, a profession, or legal obligations, is or is generally expected to be knowledgeable about a product's properties, including a potential hazard or adverse effect. An employee who does not have actual knowledge of the product's potential hazard or adverse effect that caused the injury is not a sophisticated user.

Mich. Comp. Laws § 600.2945(j).

Here, the weight of the evidence indicates that the Plaintiff's husband and Lincoln Park

15

Boring were sophisticated users. Paul's expert witness, John Lauhoff, testified as much. (Lauhoff Dep. 49). Moreover, Paul does not dispute that her husband was an experienced machinist with a reputation for excellence. At the time of his death, he had accumulated over two decades of experience as a machinist, including six years as the lead operator on this machine. Lincoln Park Boring is a machine shop with over fifty years of experience working with large machine tools. *Mills*, 238 F. Supp. 2d at 894 ("[W]here a purchaser is a "sophisticated user" of a manufacturer's product, the purchaser is in the best position to warn the ultimate user of the dangers associated with the product, thereby relieving the sellers and manufacturers from the duty to warn the ultimate user.").

The failure to warn claim must also fail because the hazard was open and obvious. Mich. Comp. Laws § 600.2948(2) provides that:

> A defendant is not liable for failure to warn of a material risk that is or should be obvious to a reasonably prudent product user or a material risk that is or should be a matter of common knowledge to persons in the same or similar position as the person upon whose injury or death the claim is based in a product liability action.

There is no duty to warn against an "open and obvious danger." *Mills*, 238 F. Supp. 2d at 893-94 (citing *Inman v. Heidelberg Eastern, Inc.*, 917 F. Supp. 1154, 1158-59 (E.D. Mich. 1996)). The standard established by this statute is an objective one. *Green v. A.P. Products, Ltd.*, 717 N.W.2d 855, 860 (Mich. 2006). Here, the danger to the machine operator was the cutting tool. The movements of the spindle (and the entire gantry) were described as slow, noisy, and visible. Testimony from witnesses for both parties indicates that even an average person would immediately recognize that coming into contact with the cutting tool would cause serious injury.

To the extent that the breach of implied warranty claim is based on a failure to warn, it must

be dismissed based on the same "sophisticated user" defense. *See Jodway v. Kennametal, Inc.*, 525 N.W.2d 883, 890 (Mich. Ct. App. 1994) ("The same rationale that bars an employee of a sophisticated user from recovering from a supplier of a dangerous product on a claim based on a failure to warn theory is also applicable to claims based on an implied warranty theory.").

Henri-Liné Tools failed to specifically address Paul's claim of a breach of express warranty, but inasmuch as it requested relief from all of the Plaintiff's claims, the Court will interpret such a request as a  motion of summary judgment to extend to this claim as well. The breach of express warranty claim is premised on the existence of an underlying design defect. Paul was unable to prove the existence of a defect. Thus, her breach of express warranty claim must also be dismissed.

As summary judgment was granted in favor of Henri-Liné Tools with respect to the claims of negligence and breach of warranty, Paul's claim of gross negligence is dismissed and the issue of the application of statutory damage cap pursuant to Mich. Comp. Laws 600.2949a need not be addressed. Furthermore, Paul's motion for an order to set a trial date is denied for mootness.

V.

For the reasons that have been set forth above, the Court (1) denies the Plaintiff's motion to strike the Defendant's reply (ECF No. 106); (2) grants the Defendant's motion for summary judgment (ECF No. 29); and (3) denies the Plaintiff's motion for an order to set a trial date (ECF No. 102).

IT IS SO ORDERED.

Dated:   March 30, 2013                          s/Julian Abele Cook, Jr.
         Detroit, Michigan                       JULIAN ABELE COOK, JR.
                                                 United States District Court Judge

17

<u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 30, 2013.

s/ Kay Doaks
Case Manager